UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

IN RE: KIRKLAND LAKE GOLD LTD.
SECURITIES LITIGATION

20-CV-4953 (JPO)

OPINION AND ORDER

———————————————————————

J. PAUL OETKEN, District Judge:

Plaintiff Stephen Brahms, individually and on behalf of all others similarly situated, brings this suit against Kirkland Lake Gold Ltd., a Canadian company that mines and processes gold, Kirkland's CEO, and the former chairman of Kirkland's board of directors (together, "Defendants" or "Kirkland"), for violations of Sections 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated under the Exchange Act, 17 C.F.R. § 240.10b-5. Brahms also alleges that Kirkland's chief executive officer, Anthony Makuch, and the former chairman, Eric Sprott, violated Section 20(a) of the Exchange Act as "controlling persons" of the company. Defendants have moved to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part.

**I.   Background**

The following facts, drawn from the amended complaint, are presumed true for the purposes of this motion. (*See* Dkt. No. 25 ("AC").)

Kirkland, a Canadian limited liability company headquartered in Toronto, owns and operates gold mines in Canada and Australia. (AC ¶ 2.) Within the gold producing industry, two of the most important measures of performance are how low a company's all-in sustaining costs are (*i.e.*, how expensive it is to mine gold) and how high the average reserve grade of a company's mines is (*i.e.*, how much gold is contained in the ore). (AC ¶¶ 23–26.) Kirkland had

established itself as a top leader among gold producers because of its performance on these two metrics — Kirkland's average all-in sustaining costs were half of the global average and the average reserve grade of its mines was nearly twenty times better than the global average during the 2019 fiscal year.  (AC ¶ 22.)

On November 25, 2019, "Kirkland announced that it had entered into a definitive agreement to acquire all outstanding securities of" Detour Gold Corporation (AC ¶ 68), a company that operated a single gold mine (AC ¶ 30).  Following this announcement, Kirkland's shares declined 17%.  (AC ¶ 68.)  Detour, unlike Kirkland, was an underperforming gold miner — Detour's all-in sustaining costs were twice the amount of Kirkland's, and Detour's reserve grade was nearly twenty-fold below Kirkland's.  (AC ¶ 4.)  As a result, Kirkland's acquisition of Detour would dilute Kirkland's performance on these two important metrics.  (AC ¶¶ 32, 69.)

In the wake of this acquisition, Brahms brought this action on behalf of those who bought or otherwise acquired Kirkland securities between January 8, 2019, and November 25, 2019, alleging that Defendants made material misrepresentations and omissions that artificially inflated Kirkland's shares.  (AC ¶ 86.)  Brahms alleges that Kirkland and Makuch made a series of statements and representations during the class period that misled the public to believe that Kirkland was not "planning to acquire another gold mining company, let alone one of Detour's characteristics." (AC ¶ 5).  In reality, Kirkland was actively negotiating to acquire Detour (AC ¶ 33), and performing due diligence on the company during the class period (AC ¶ 59).  The alleged material misrepresentations and omissions Kirkland and Makuch made during the class period fall into five categories: (1) statements about acquisitions (*see* AC ¶¶ 39, 45, 53); statements about business strategy (*see* AC ¶¶ 33, 37, 49, 55, 57, 62, 64); statements about the company's ongoing operations and performance (*see* AC ¶¶ 37, 41, 42, 45, 52, 55, 56, 60, 63, 64,

66); statements about the company's internal controls and compliance with accounting standards (*see* AC ¶¶ 50, 51, 55); and statements projecting the company's future performance (*see* AC ¶¶ 37, 38, 44, 52, 58, 61, 65).

In response to Brahms's complaint, Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6). (*See* Dkt. No. 29.)

## II.     Legal Standard

To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Securities fraud claims, however, demand more: to survive a motion to dismiss, plaintiffs must satisfy "heightened pleading requirements." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). "[A] party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Similarly, the Private Securities Litigation Reform Act ("PSLRA") sets forth that when a plaintiff alleges securities fraud for an untrue statement or omission of a material fact, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (explaining similar requirements under Federal Rule of Civil Procedure 9(b)). Moreover, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2)(A). "To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or

3

reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

**III.   Discussion**

   **A.   Statements About Acquisitions**

The first set of allegations are three remarks Makuch publicly made about acquisitions that Brahms argues materially misled investors about Kirkland's plans to acquire Detour. (*See* AC ¶¶ 39, 45, 53.)

   **1.   Whether Nondisclosure of the Detour Acquisition Negotiations Was Materially Misleading**

"There is no specific duty to disclose merger negotiations under SEC rules until they become definitive agreements." *Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473, 485 (S.D.N.Y. 2009), *aff'd sub nom. Thesling v. Bioenvision, Inc.*, 374 F. App'x 141 (2d Cir. 2010). When a company speaks on an issue, however, "there is a duty to tell the whole truth, even when there is no existing independent duty to disclose information." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) (cleaned up). So, if a company publicly comments on mergers and acquisitions, it must "speak truthfully and completely." *Vladimir*, 606 F. Supp. 2d at 485.

In applying this conditional duty to disclose possible mergers and acquisitions, courts consider whether the nondisclosure was materially misleading. A plaintiff's claim that a defendant company falsely denied ongoing merger discussions, for instance, should survive a motion to dismiss. *See In re Columbia Sec. Litig.*, 747 F. Supp. 237, 243 (S.D.N.Y. 1990). Similarly, when a plaintiff alleges that a company representative inaccurately denied evidence of a possible merger, that claim should survive a motion to dismiss. *In re MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 281 (E.D.N.Y. 2000). Even if a company does not make any direct comments relating to mergers and acquisitions, a plaintiff can still sufficiently plead that a

company was required to disclose a potential merger or acquisition.  *See, e.g.*, *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993) ("[W]hen a corporation is pursuing a specific business goal and announces that goal as well as an intended approach for reaching it, it may come under an obligation to disclose other approaches to reaching the goal when those approaches are under active and serious consideration.").

Having reviewed the complaint, the Court concludes that Brahms has sufficiently pleaded facts supporting his contention that Kirkland materially misled investors by not disclosing its potential acquisition of Detour.  Makuch publicly commented on certain minimum, objective standards — like all-in sustaining costs — for any assets that Kirkland would acquire.  (Dkt. No. 25 ¶ 39.)  But he falsely contradicted what the company's present intentions were:  Detour did not meet Makuch's expressed standards for an asset, yet Kirkland was actively considering acquiring Detour at the time of Makuch's statements.  (AC ¶ 33.)  Brahms further argues that Kirkland misled investors because Makuch made statements about the company's plan for growth, which prioritized "organic growth" over acquisitions and rejected acquisitions as necessary for growth.  (Dkt. No. ¶¶ 45, 57.).  Notably, these statements about growth did not reject the possibility of Kirkland acquiring a company like Detour.  But Makuch did not simply discuss organic growth as, say, the company's "primary focus" while staying silent about a possible acquisition to fuel growth, which would not "not give rise to a duty to disclose potential [acquisition] negotiations."  *Vladimir*, 606 F. Supp. 2d at 490.  Makuch instead announced Kirkland's goal — growth — and explicitly downplayed acquisitions as an approach for this goal while Kirkland was actively considering an acquisition.  Publicly commenting on acquisitions may have created a duty to "speak truthfully and completely," *Vladimir*, 606 F. Supp. 2d at 485 — *i.e.*, to disclose that Kirkland was actively considering acquiring a company.  Whether

Makuch had this duty, given that he mentioned acquisitions while simultaneously minimizing it as an approach for Kirkland to grow, and whether his nondisclosure of a potential acquisition was materially misleading, are "questions for the trier of fact." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d at 268.

Kirkland's arguments to the contrary are unconvincing. Kirkland first contends that there is a "timing problem" because some of Makuch's statements concerning acquisitions happened during a break in Kirkland's acquisitions discussions with Detour. (Dkt. No. 30 at 8.) The flaw in this argument, as Brahms rightly points out, is that the Court may not consider Kirkland's asserted "facts" at the motion to dismiss stage. Brahms alleges that Makuch's statements were during active acquisition negotiations between Kirkland and Detour (AC ¶ 33); the Court must accept this as true, *see Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). Kirkland's other arguments offer alternative interpretations of Makuch's remarks: the minimum standards Makuch expressed for acquisitions referred to potential "asset purchase[s]," not the acquisition of another company (Dkt. No. 30 at 9); and Makuch's comments about Kirkland's growth only "expressed confidence" in organic growth but did not rule out acquisitions (Dkt. No. 30 at 9–10).

Yet Kirkland, in offering these alternative interpretations of Makuch's remarks, elides both how the veracity of statements is measured in this context and the duty Makuch may have had to disclose Kirkland's active consideration of an acquisition. The "veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers . . . . Even a statement which is literally true, if susceptible to quite another interpretation by the reasonable investor[,] may properly be considered a material misrepresentation." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013) (internal citations and quotations omitted). Makuch's comments on standards for acquisitions, even if

they strictly applied to the acquisition of individual assets and not whole companies, could reasonably be understood to bar the acquisition of Detour — a company whose mine did not meet these standards. (See Dkt. No. 25 ¶ 30.) That Makuch never ruled out acquisitions in his comments about minimum standards and the company's preference for organic growth also does not undermine Brahms's colorable claim here. Had Makuch stayed silent on acquisitions and simply touted the company's potential for organic growth, he would have had no duty to disclose that Kirkland was actively considering an acquisition. *See Vladimir*, 606 F. Supp. 2d at 490. But Makuch did not stay silent on acquisitions. Makuch instead broached the topic of acquisitions yet failed to speak "truthfully and completely," *Vladimir*, 606 F. Supp. 2d at 485 — he downplayed acquisitions as an approach for the company to grow and failed to disclose that Kirkland was actively considering an acquisition. So, it is a "question[] for the trier of fact" whether his nondisclosure was materially misleading. *In re Time Warner Inc. Sec. Litig.*, 9 F.3d at 268.

### 2. Scienter

Kirkland argues that, even if its nondisclosure of its potential Detour acquisition was materially misleading, this claim should be dismissed because Brahms failed to allege a strong inference of scienter. Kirkland contends that none of Brahms's allegations suggest "that the Defendants knew they had a duty to disclose the Detour acquisition before a definitive agreement was signed," and that Brahms "provides no reason why Kirkland and its management would lie about the Detour acquisition." (See Dkt. No. 30 at 11.) It is correct that scienter can be sufficiently pleaded through "facts that suggest [that defendants] knew they had a duty to disclose" information they withheld, *In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1213 (S.D.N.Y. 1996), or through alleging that defendants enjoyed concrete benefits "realized by . . . wrongful nondisclosures alleged," *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261,

7

270 (S.D.N.Y. 2009). But these approaches — alleging that a defendant knowingly ignored a duty to disclose or had a motive to not disclose — are not the only way to establish scienter. *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) ("To satisfy the scienter requirement, a plaintiff need not allege facts which show the defendants had a motive for committing fraud, so long as the plaintiff . . . adequately identifies circumstances indicating conscious behavior by the defendants.")

"In order to plead scienter adequately under the PSLRA, a plaintiff must plead 'with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind.'" *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting 15 U.S.C. § 78u–4(b)(2)). One circumstance that gives rise "to a strong inference of the requisite scienter" is when the complaint "sufficiently alleges that the defendants . . . knew facts or had access to information suggesting that their public statements were not accurate." *Id.* at 199. Whether there is a strong inference of scienter is based on "the facts alleged, taken collectively" instead of "whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322–23 (2007).

Brahms's allegations, taken together, sufficiently support an inference of scienter for Kirkland's nondisclosure of its potential Detour acquisition. Brahms alleges that each of Makuch's public comments on acquisitions was made while Kirkland was in active discussions to acquire Detour. Kirkland does not dispute the allegation that Makuch "knew about the status of Kirkland's discussions with Detour." (Dkt. No. 34 at 8.) Thus, when Makuch publicly stated certain minimum standards for acquisitions that Detour itself did not meet, he allegedly knew — or should have known — that these minimum standards were inaccurate. Makuch's subsequent comments dismissing acquisitions as necessary for Kirkland's goal to grow, on their own, may

not give rise to a strong inference of scienter. When taken together with Makuch's comments about minimum standards for acquisitions, however, these comments downplaying acquisition can reasonably be understood to further contribute to a then-known falsehood — that Kirkland would not consider acquiring a company like Detour. *See Tellabs, Inc.*, 551 U.S. at 324 (holding that a complaint survives if "the inference of scienter [is] cogent and at least as compelling as any opposing inference one could draw from the facts alleged").

### B. Statements About Business Strategy

The second set of allegations concerns statements Kirkland made about its business strategy. Kirkland issued several statements about its strategy of growing low-cost, high-margin production. (*See* AC ¶¶ 33, 37, 49, 55, 57, 62, 64.) Brahms argues that these statements were misleading in light of Kirkland's decision to later acquire Detour. Kirkland counters that these statements are non-actionable because they were not false when made, made no explicit promises, and did not foreclose a future acquisition of Detour. The Court agrees with Kirkland's arguments.

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801 (2d Cir. 1996), is instructive. The defendant company in that case made several statements about its marketing strategy to narrow prices between its premium and discount products by increasing the prices of the latter. *Id.* at 805. Some time later, however, the defendant reversed course and decreased the prices of its discount products. *Id.* Because the defendant, according to the plaintiffs, "had already made the decision, or was actively considering adopting a plan, to slash . . . prices" when it made statements about its strategy to increase prices, the plaintiffs argued that these prior statements were false. *Id.* at 812. The Second Circuit rejected this argument and found that these statements were not actionable: The plaintiffs failed to allege any facts "demonstrating that during the class period [the defendant]

9

was doing anything but pursuing [its expressed] strategy . . . . Furthermore, there is no allegation that [the defendant] made any statements or predictions foreclosing the possibility of adopting alternative marketing strategies." *Id.*

Similarly, here, Brahms fails to allege that Kirkland did anything but pursue its strategy of low-cost, high-margin production *before* acquiring Detour. Like the claim in *San Leandro*, Brahms's claim that Kirkland was actively considering the acquisition of Detour when it issued statements about its business strategy is insufficient to survive a motion to dismiss. Further, none of the alleged statements about Kirkland's business strategy foreclosed the possibility of acquiring Detour. All of the statements about business strategy in the complaint simply express Kirkland's desire to grow its low-cost, high-margin production, as opposed to "promises to maintain [a] policy in the future." *Id.* at 811. The only statement that comes close to foreclosing the acquisition of Detour — a statement from Makuch about not putting lower-grade mineralization into a mill — was phrased as what the company "want[ed]." (Dkt. No. 25 ¶ 62.) "A single, vague statement such as the one [Brahms] rel[ies] on . . . cannot have led any reasonable investor to conclude that [Kirkland] had committed itself to a particular [] strategy and had foreclosed all alternatives." *San Leandro*, 75 F.3d at 805. The Court thus dismisses claims based on these allegations.

        C.     **Statements about Kirkland's Ongoing Operations and Performance**

Brahms also alleges that Kirkland described its ongoing operations and performance on key metrics in a materially misleading way. (*See* AC ¶¶ 37, 41, 42, 45, 52, 55, 56, 60, 63, 64, 66.) The statements supporting this allegation in the complaint include ones like: Kirkland stating it was "anchored by two high-grade low-cost operations" (Dkt. No. ¶ 25); Kirkland calling itself "one of the lowest cost producers" in the industry (Dkt. No. ¶ 41); and Kirkland reporting current metrics of its all-in sustaining costs and the grade of its mineral reserves (Dkt.

No. ¶ 64). Brahms, again, does not allege that any of these statements were false when Kirkland made them. He instead alleges that Kirkland's acquisition of Detour, which purportedly changed the conditions of the company's operations and its performance on key metrics, somehow rendered Kirkland's contemporaneous descriptions of its operations and performance on key metrics before the acquisition misleading. But "[s]uch allegations of 'fraud by hindsight' are insufficient to plead fraud." *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 690 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013). Since Brahms offers no evidence these statements "were false at the time made," *San Leandro*, 75 F.3d at 812, these allegations are dismissed.

### D. Statements about Kirkland's Internal Controls and Compliance with Accounting Standards

The complaint states that Kirkland lacked adequate internal controls over its financial reporting. (*See* AC ¶¶ 50, 51, 55.) Kirkland correctly notes that Brahms does not explain, in the complaint or in his briefing, how "Kirkland's financial controls were flawed; indeed, [Brahams] does not even impugn any of the financial results that Kirkland disclosed to investors." (Dkt. No. 30 at 22.) Because Brahms's "allegations of lack of controls is an insufficient conclusory assertion without any factual support," these allegations are also dismissed. *La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432, 443 (S.D.N.Y. 2010).

### E. Statements Projecting Kirkland's Future Performance

Brahms contends that Kirkland misled investors with financial projections and guidance it issued because these projections did not account for the potential acquisition of Detour. (*See* AC ¶¶ 37, 38, 44, 52, 58, 61, 65.) Kirkland makes two independent arguments here: (1) that Brahms does not allege that Kirkland's projections "rested on improper assumptions or data that would have rendered them false when made" (Dkt. No. 30 at 17–18); and (2) that Brahms's

claims are "barred by the PSLRA's safe harbor for forward-looking statements" (Dkt. No. 30 at 18–22). The Court agrees with Kirkland's first argument; because this first argument provides a sufficient basis to dismiss these allegations, the Court does not address Kirkland's second argument.

"Plaintiffs are not permitted . . . to proceed with allegations of 'fraud by hindsight,' in which statements are proven false on the basis of subsequent information." *In re Ferroglobe PLC Sec. Litig.*, No. 19 Civ. 629, 2020 WL 6585715, at *6 (S.D.N.Y. Nov. 10, 2020) (quoting *Novak*, 216 F.3d at 309). Yet this is exactly what Brahms's complaint does — it attacks Kirkland's various projections as "unrealistic" because of Kirkland's "*plans* to incorporate Detour into its operations." (Dkt. No. 25 ¶ 36) (emphasis added). The acquisition of Detour, according to Brahms, would "transform" Kirkland from an "ultra low-cost, high-grade producer"— what Kirkland projected it would be, both qualitatively and quantitatively — into a "higher-cost, lower grade producer." *Id.* In other words, Brahms alleges that Kirkland's acquisition of Detour retrospectively rendered Kirkland's earlier projections inaccurate. These allegations of "fraud by hindsight" cannot survive a motion to dismiss. Had Kirkland's plans to acquire Detour fallen through, for instance, the complaint provides no other basis for why Kirkland's projections are actionable. Without the complaint containing "specific facts that support the inference that defendants were *contemporaneously* aware of contradictory information" when they issued their projections, *Ferroglobe*, 2020 WL 6585715, at *6 (emphasis added), these allegations must be dismissed.

Brahms relies on a dubious distinction to argue that his allegations amount to more than "fraud by hindsight." He cabins allegations of fraud by hindsight to scenarios where projections do "not pan out because of an unforeseen circumstance." (Dkt. No. 33 at 16.) Because Kirkland

12

knew "at the time [it issued its projections] that the contemplated acquisition" of Detour would contradict its projections, Brahms asserts that these projections are actionable. *Id.* This argument misses the mark because, as Brahms recognizes, the acquisition of Detour was "*contemplated*" when Kirkland issued its financial projections, not finalized. Brahms essentially expected Kirkland to "have anticipated future events" and adjusted its projections accordingly. *Novak*, 216 F.3d at 309. But allegations that would have required Kirkland to be "clairvoyant . . . do not suffice to make out a claim of securities fraud." *Id.*

### F.  Sprott's Individual Liability

The last set of allegations concerns the purported individual liability of Sprott. Brahms contends that Sprott is liable for the false statements Kirkland made during the class period under a theory of scheme liability. (*See* Dkt. No. 33 at 25.) The Court concludes that this claim is not adequately pleaded to survive dismissal.

Scheme liability requires the "performance of an inherently deceptive act that is distinct from an alleged misstatement." *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011). The alleged "scheme" here is that Kirkland, through material misstatements and omissions about its pending Detour acquisition, tricked investors into purchasing shares at artificially inflated prices. (Dkt. No. 25 ¶¶ 103–105.) Brahms cedes that Sprott was not the "maker" of any false statement for this alleged scheme (Dkt. No. 33 at 25), but he argues for the first time in his brief that Sprott is still culpable under scheme liability, *id*. Yet he points to no actions, let alone inherently deceptive ones, that Sprott took to advance the alleged scheme here. He merely offers that Sprott "remain[ed] silent" as Kirkland made false statements and "secretly acquired a substantial position in Detour." (Dkt. No. 33 at 25.) Mere silence falls short of the inherently deceptive act that scheme liability requires, especially since Brahms's complaint lacks "particularized allegations that he had any role in shaping [the] content" of Kirkland's alleged misstatements. *In*

13

*re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 576 n.14 (S.D.N.Y. 2014). And Brahms fails to explain how Sprott "secretly" acquiring a position in Detour "affected the market for securities" for Kirkland, which scheme liability also requires. *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, No. 19 Civ. 7536, 2021 WL 1199035, at *8 (S.D.N.Y. Mar. 30, 2021) (internal quotation marks omitted). This claim therefore must be dismissed.[1]

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Defendants' statements about business strategy, ongoing operations and performance, internal controls and compliance with accounting standards, and projections of future performance, and DENIED as to Makuch's statements about acquisitions (*see* AC ¶¶ 39, 45, 53). The motion to dismiss the claims against Sprott is also GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 29.

SO ORDERED.

Dated: September 30, 2021
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[1] The complaint also asserts a claim against Sprott under Section 20(a) of the Exchange Act as a "controlling person[]" at Kirkland. (Dkt. No. 25 ¶ 111.) Kirkland does not directly confront this claim in its briefing. However, like scheme liability's requirement of "an inherently deceptive act," controlling-person liability requires "'that the controlling person was in some meaningful sense a culpable participant in the fraud perpetuated by the controlled person,'" *In re Philip Morris Int'l Inc. Sec. Litig.*, No. 18 Civ. 08049, 2021 WL 4135059, at *15 (S.D.N.Y. Sept. 10, 2021) (quoting *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)). Since Brahms fails to allege how Sprott was meaningfully culpable in this alleged fraud, this claim is also dismissed.